# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

L.A. INSURANCE AGENCY
FRANCHISING, LLC,

         Plaintiff,

v.

DAVID T. ELIA, L.A. INSUR-
ANCE AGENCY NV2, INC.,
and GO INSURANCE,

         Defendants.

Case No. 18-13523
Hon. Terrence G. Berg

## ORDER GRANTING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION AND TO SUPPLEMENT THE RECORD

## I.  Introduction

Plaintiff L.A. Insurance[1] granted a franchise to Defendant David T. Elia.  Plaintiff alleges that after the expiration of its franchising agreement, Defendant Elia continued operating an insurance agency in the same location as the franchise, but under a different name, in violation of the noncompete clause in the franchise agreement. Plaintiff seeks a preliminary injunction against Defendants Elia, L.A. Insurance Agency NV2 ("NV2"), Inc., and GO Insurance,

---

[1] Plaintiff's full corporate name is "L.A. Insurance Agency Franchising, LLC." Defendants are David T. Elia, an individual, his franchise "L.A. Insurance NV2," and his successor company, "GO Insurance."

to prevent them from violating the terms of the franchise agreement. For the reasons set out below, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction (ECF No. 4) with a limited scope. In addition, after oral argument on the motion, Plaintiff filed a Motion to Supplement the Record. ECF No. 11. The Court also **GRANTS** that motion.

## II.    Background

Plaintiff is an insurance agency franchisor and owns the "L.A. Insurance®" federal trademark. ECF No. 4 PageID.87. Plaintiff enters into franchising agreements with other businesses, allowing them to use Plaintiff's trademark. *Id.* at PageID.86–87. These agreements require the franchisee to pay a fee and commissions to Plaintiff. *Id.* at PageID.87. Franchisees must also "abide by other obligations described in the franchise agreement," in exchange for being able to use the LA Insurance name and related company assets. *Id.* The core of Plaintiff's case is that Defendant is allegedly operating an insurance agency—called GO Insurance—in Las Vegas in the same location where he had previously been operating his L.A. Insurance franchise. *Id.* According to Plaintiff, this violates the non-compete clause of the franchise agreement.

Plaintiff and Defendants Elia and NV2 entered into a 10-year franchise agreement that Defendant Elia signed on October 29,

2008.[2] *Id.* at PageID.88. But Defendant argues that the agreement was effective as of March 5, 2008. Although this factual question was not fully developed in the parties' briefing, at oral argument, the parties explained that Plaintiff and Defendant Elia had a dispute initially over which of two franchise agreements would control the relationship between the parties, and they submitted this matter to arbitration in early 2008. March 5, 2008 was apparently the day on which Defendant Elia deposited both versions of the franchise agreement with the arbitrator and agreed to be bound the arbitrator's decision regarding which franchise agreement controlled the relationship. ECF No. 10-1. Plaintiff later filed a Motion to Supplement the Record containing a copy of judgment on the arbitration. ECF No. 11.

As the franchise agreement was for a ten-year term, it was set to expire either on March 5, 2018 or on October 29, 2018, depending on the date used to mark its commencement. For the purposes of determining whether Plaintiff is entitled to injunctive relief, as explained below, it is not necessary at this stage of the proceedings for the Court to determine which date applies as the expiration date for the agreement.

---

[2] There is no fully-executed copy of the contract in the record. However, neither party contends that the contract is not binding due to not being fully executed.

In late September 2018, Plaintiff "learned that Defendant NV2 had removed the L.A. Insurance name from its location and replaced it with signage identifying the agency as 'GO Insurance.'" ECF No. 4 PageID.88. On October 5, 2018, Plaintiff sent a letter to Defendants Elia and NV2, stating that the franchise agreement would expire on October 29, 2018 and reminding Defendants of their obligations upon expiration of the franchise agreement, which include:

- Cease using Plaintiff's trademarks;
- Close the insurance agency;
- Not compete with Plaintiff for two years; and
- Not divert the agency's customers elsewhere.

Specifically, Plaintiff notified Defendants Elia and NV2 that operating "GO Insurance" violated Section 11.2 of the franchise agreement, "which prohibits the operation of competing businesses within two miles of the franchise location for a two-year term following expiration of the franchise agreement, and prohibits the diversion of business and customers to a competing business." ECF No. 8 PageID.89. Plaintiff filed suit on November 13, 2018. ECF No. 1. Yet, according to Plaintiff, Defendants continue to operate in violation of the agreement. On December 12, 2018, Plaintiff filed its Motion for a Temporary Restraining Order and Preliminary

Injunction. ECF No. 4. At issue now is only whether Plaintiff is entitled to a preliminary injunction.[3]

In response, Defendants raise several factual disputes. First, Defendants argue that they did not receive the legally-required disclosures, notices, and proposed agreements ten business days in advance of the date the franchise agreement was executed. ECF No. 8-1 PageID.137. Defendants further claim that Plaintiff was aware of this deficiency. ECF No. 8-2 PageID.201. Defendants argue that Plaintiff's failure to comply with the statutory requirements for franchisors entitles Defendants to rescind the franchise agreement contract in its entirety. If the Defendants were correct that the contract should be rescinded, it would not be appropriate to grant a preliminary injunction to enforce the terms of that contract.

---

[3] A temporary restraining order (TRO) is issued *ex parte* on an emergency basis where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)–(2). The Court declined to issue a temporary restraining order upon receiving Plaintiff's motion because Plaintiff had not complied with the requirements of the federal rules to make an adequate showing of necessity. Plaintiff's counsel did not state with adequate specificity any efforts to notify Defendants of the pending motion or why that notice should not be required. Nor did Plaintiff explain the urgency of this motion given that it was filed one month after the Complaint and three months after Plaintiff learned of the alleged breach of the agreement. And Plaintiff did not submit an affidavit or verified complaint as described in the Rule. Consequently, the Court construes Plaintiff's motion as a Motion for a Preliminary Injunction only.

Second, Defendants argue that because they converted the L.A. Insurance franchise into GO Insurance, they are not operating GO Insurance within two miles of an existing L.A. Insurance franchise location. *Id.* at PageID.137–38. As a component of this argument, Defendants maintain that the franchise agreement expired on March 5, 2018, so that converting to GO Insurance after that date also did not violate the agreement.

## III. Standard of Review

"When deciding whether to issue a preliminary injunction, a district court should address four factors: (1) the likelihood of success on the merits; (2) the irreparable harm that could result if the injunction is not issued; (3) the impact on the public interest; and (4) the possibility of substantial harm to others." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). The parties agree that this standard of review is the correct one. ECF No. 8-1 PageID.138.

## IV. Analysis

The Court will analyze the four factors set forth in Sixth Circuit case law to determine whether a preliminary injunction is appropriate. As Defendants note, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Plaintiff has met its burden here.

### a. Likelihood of success on the merits

Plaintiff's Complaint alleges breach of contract. ECF No. 1. In order to prevail on a claim for breach of contract under Michigan law, a claimant must show by a preponderance of the evidence that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).[4]

### i. Michigan's Franchise Investment Law

In contending that Plaintiff cannot show a substantial likelihood of success on the breach of contract claim, Defendants first argue that the franchise agreement is subject to rescission under Michigan law because Plaintiff failed to comply with Michigan's Franchise Investment Law ("MFIL"). The relevant provision of the law states:

> A franchise shall not be sold in this state without first providing to the prospective franchisee, at least 10 business days before the execution by the prospective franchisee of any binding franchise or other agreement or at least 10 business days before the receipt of any consideration, whichever occurs first, a copy of the disclosure statement described in subsection (2), the notice described in subsection (3), and a copy of all proposed agreements relating to the sale of the franchise.

---

[4] Because this action arises under federal diversity jurisdiction, "we apply the substantive law of Michigan, as the forum state." *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012).

M.C.L. § 445.1508.

The statute allows for rescission of any agreements that do not comport with these requirements. M.C.L. § 445.1531(1). Defendants argue that because they received the agreement on February 24 and it became "effective" on March 5, fewer than ten business days later, Plaintiff violated Michigan law. But a plain reading of the statute along with the documents Defendants submitted reveals flaws in this argument. The statute requires ten business days between receipt of the proposed agreement and the "execution" or transfer of any consideration. While the statute does not expressly define the term "execution," in the context of a written agreement, to "execute" the agreement plausibly means to sign the agreement. *See, e.g.*, *Zulkiewski v. American General Life Ins. Co.*, No. 299025, 2012 WL 2126068, at *4 (Mich. Ct. App. June 12, 2012) (discussing the effect of the execution of an electronic signature). Here, the agreement Defendant submitted was executed by the franchisee on October 28, 2008, more than ten days after February 24, 2008.

There are other problems with Defendants' argument that they ought to be able to rescind the contract. For one, a technical violation of the statute does not necessarily entitle a franchisee to rescind a franchise agreement. *See Lofgren v. AirTrona Canada*, 677

Fed. App'x 1002, 1010 (6th Cir. 2017). In *Two Men and a Truck/International, Inc. v. Two Men and a Truck/Kalamazoo, Inc.*, a district court in the Western District of Michigan found that rescission was not an available remedy even though the franchisor had technically violated the terms of § 445.1508. 949 F. Supp. 500, 506–07 (W.D. Mich. 1996). The Sixth Circuit in *Lofgren* found that the franchisee in that case *was* entitled to rescission but distinguished the case from *Two Men* without overturning it. 677 Fed. App'x at 1010.

Reading *Lofgren* together with *Two Men* reveals that under Michigan law, there are other requirements a franchisee must meet in order to rescind a franchise agreement for a violation of § 445.1508. First, the weight of authority indicates that a franchisee must avoid any material breach of the franchise agreement. *Lofgren*, 677 Fed. App'x at 1010; *Two Men*, 949 F. Supp. 505–06; *but see Martino v. Cottman Transmission Systems, Inc.*, 554 N.W.2d 17, 21 (Mich. Ct. App. 1996) (finding that unclean hands does not prevent a party to a contract from asserting its right of rescission based on a violation of the MFIL). Second, the statutory violation must be more than de minimis. *Lofgren*, 677 Fed. App'x at 1010. And third, the franchisee must timely assert its right of rescission. *Two Men*, 949 F. Supp. at 507 (citing *Mesh v. Citrin*, 300 N.W. 870, 872 (Mich. 1941)). In addition, the Michigan Court of Appeals found that where a defendant "failed to tender back the benefits of the

9

contract (the signs, trademarks, equipment, location, proceeds)," rescission was "not available" as a remedy. *Coffee Beanery, Ltd. v. Albert*, 2006 WL 1330326, at *2 (Mich. Ct. App. May 16, 2000).

Indeed, the Michigan Franchise Investment Law specifically protects a party's other common law contract rights, including the ability to bring suit for a breach of the contract before a court determines that it has been rescinded. *See In re Dynamic Enters., Inc.*, 32 B.R. 509, 516–17 (M.D. Tenn. Bankr. 1983), *rev'd on other grounds* ("A franchisee that becomes aware of a violation of the Michigan Franchise Investment Law thus may move to rescind the contract by initiating its own action, may file an action for damages, may await the franchisor's offer of rescission, or may continue under the contract. The franchisee may not, however, simply ignore the obligations imposed by the franchise agreement."); M.C.L. § 445.1534 ("Nothing in this act shall limit a liability which may exist by virtue of any other statute or under common law if this act were not in effect.").

As discussed in the subsection below, the Court finds that Plaintiff has shown a strong likelihood of success on its claim that Defendants have materially breached the franchise agreement by violating the non-compete clause. In addition, any statutory violation is *de minimis*—there were at least eight business days between the time Defendants admit they received the required information and

the time they allegedly agreed to be bound by the franchise agreement. As *Two Men* notes, a merely technical violation of the statute is not enough to allow a franchisee to rescind a franchise agreement. 949 F. App'x at 506 (finding that a franchisor disclosing required information to a franchisee seven business days before the franchise agreement was signed did not entitle the franchisee to rescind the agreement after breaching its material terms).

Third, Defendants have not timely asserted any right of rescission. According to Defendants' own briefing, Defendant Elia was aware of the claimed statutory violation over ten years ago. His handwritten notes on the disclosure acknowledgement indicate as much. ECF No. 8-2 PageID.208. Instead of asserting his right of rescission at that time, he waited until the term of the agreement had expired and Plaintiff sued him for materially violating its terms.[5]

Finally, there is no evidence that Defendants sought to tender back the benefits received under the franchise agreement. As this would likely involve paying Plaintiff back for Defendants' profits

---

[5] In *Martino*, the Michigan Court of Appeals found that the question of whether Plaintiffs unduly delayed before seeking rescission was not a genuine issue of material fact. 554 N.W.2d at 22. However, the court based its decision on *Interstate Automatic Transmission Co., Inc. v. Harvey*, 350 N.W.2d 907 (Mich. Ct. App. 1984), which found that a two-year delay did not bar rescission. That is substantially different factual scenario from the instant case, where Defendants waited ten years and until they were being sued for breaching the agreement to raise rescission.

earned over the last ten years, it is unsurprising that Defendants have not done so.

Based on the foregoing analysis, Defendants are not entitled to rescind their franchise agreement with Plaintiff. Plaintiff has shown that it is likely to succeed on the merits of its position on the breach of contract claim at trial.

## ii. Terms of the contract

As part of the analysis of whether Plaintiff is likely to succeed on the merits, the Court must also analyze whether Plaintiff has carried its burden with respect to showing a substantial likelihood that Defendants breached the contract. Plaintiff has done so here.

Defendant does not dispute that it is currently operating GO Insurance in the same physical location where it has been operating L.A. Insurance for the last ten years. Nor does it argue that the noncompete clause is unreasonable and unenforceable under Michigan law.[6] Instead, Defendant's argument is that it is not violating the noncompete clause because it de-identified its L.A. Insurance agency—converting it to GO Insurance—and there is no *other* L.A. Insurance franchise within two miles of what is now GO Insurance.

---

[6] There is ample support for the conclusion that such a restriction is reasonable and enforceable. *See L.A. Insurance Agency Franchising, LLC v. Suleiman Kutob*, No. 18-cv-12310, ECF No. 33 PageID.1126–27 (E.D. Mich. Nov. 8, 2018) (granting Plaintiff's Motion for Preliminary Injunction after finding that a two-mile radius restriction for a period of two years is reasonable under Michigan law).

There are several sections of the franchise agreement that are relevant to this dispute. First, § 11.2 states:

> On the termination . . . of this Agreement . . . the Franchisee, its shareholders, officers, directors, partners, owners or investors, must not, for a period of two years commencing on the later of the effective date of termination, expiration or non-renewal, or the date of any Court order enforcing this provision, have an interest . . . in any Competing Business . . . within any "Geographic Area" (defined below).
>
> Franchisee, its shareholders, officers, directors, partners, owners or investors must not, during the term of this Agreement and for a period of two years after termination, expiration or non-renewal of this Agreement: (a) divert or attempt to divert any business or customer of the Franchise Business or any other Agency to any Competing Business by direct or indirect inducements or otherwise; (b) employ or seek to employ any person who was, at the time, employed by Franchisor or its affiliates or by another Franchisee. . ."
>
> For purposes of this Agreement, a "Competing Business" means a business that sells non-standard auto or homeowner's insurance products. For purposes of this Agreement, a "Geographic Area" includes **an area within a two-mile radius of the Franchise Location or the location of any other Agency, existing at the time that Franchisee begins to operate the Competing Business.**

ECF No. 8-2 PageID.177 (emphasis added).

Additionally, § 14.1 contains the obligations of the franchisee upon termination or expiration of the franchise agreement. These obligations include that the franchisee must stop using all marks, names, or logos of the franchise, stop any franchise advertising, discontinue use of proprietary business information, and stop using the telephone number of the franchise. Apart from the telephone number—about which parties disagree—both sides agree that Defendants complied with the obligations set forth in § 14.1.

Parties also agree that GO Insurance is a Competing Business under the franchise agreement. What parties disagree about is whether "an area within a two-mile radius of the Franchise Location" refers to *the* franchise location—the franchise location that the agreement itself creates. In addition, parties disagree about whether the clause "existing at the time that Franchisee begins to operate the Competing Business" applies to both preceding objects: "the Franchise Location," and "the location of any other Agency." Plaintiff argues that the two-mile radius applies around GO Insurance's current location, because that is where NV2 *used* to be. Plaintiff's position is also that "existing at the time that Franchisee begins to operate the Competing Business" applies only to "the location of any other Agency," and *not* "the Franchise Location." Defendants argue that because they de-identified in accordance with § 14.1, the Franchise Location no longer exists. Defendants also

argue that the geographic restriction applies to Competing Businesses within two miles of Franchise Locations that exist at the time the Franchisee begins to operate a Competing Business. There is no other L.A. Insurance location within two miles of GO Insurance, so Defendants argue they cannot be in violation of § 11.2.

Upon a close parsing of the text of the agreement, the phrase "the Franchise Location" clearly means *the* franchise location that the agreement operates to permit. If the agreement was meant to refer to *any* Franchise Location, the agreement would specifically say "any" or it would use the indefinite article "a" rather than the definite article "the." It would also defeat the purpose of the noncompete clause to allow a franchisee to simply convert the franchise location into a Competing Business at the end of the franchise agreement term. As Plaintiff notes in its reply, this would allow franchisees to use the franchise name recognition to build a client base and then hijack those clients upon expiration of the franchise agreement. ECF No. 10 PageID.225. This practice would also violate § 11.2(a), which prohibits Defendant from diverting clients of L.A. Insurance to its Competing Business.

In addition, Defendants argue that § 14.1 would be meaningless if § 11.2 were interpreted to prohibit Defendants from operating a non-standard insurance business in the same location but under a different name. The way Defendants explain it, there would be no

reason to require de-identification under § 14.1 if § 11.2 already prohibited them from remaining in the same location. But this ignores the fact that franchisees retain the option to keep their lease on a franchise location but replace the L.A. Insurance franchise with a different type of business—one that does not compete with L.A. Insurance. If L.A. Insurance declined to assume the franchisee's lease at the expiration of the franchise agreement, the franchisee would be free to continue leasing the building, using the property in any way he wished—except as a Competing Business. In this situation, § 14.1 would require de-identification, but § 11.2 would not be implicated.

The record shows that there is a substantial likelihood that Plaintiff will be able to establish that Defendants' behavior violates the material terms of the franchise agreement. As to the dispute over whether the franchise agreement expired in March or October, this question is irrelevant. Even if the agreement expired in March, the non-compete clause creates a continuing obligation effective for two years after the date of the expiration. Operating GO Insurance in September 2018 falls within this time period whether the agreement concluded back in March 2018 or not until October.

For the reasons explained above, Plaintiff has shown that it is likely to succeed on the merits of its underlying claim.

## b. Irreparable harm

After establishing Plaintiff's likely success on the merits, the irreparable harm analysis is straightforward and based on settled case law. Defendant argues that this is a breach of contract case in which monetary damages will compensate Plaintiff.

A harm is reparable if it can be compensated with money damages. *Basicomputer*, 973 F.2d at 511. But "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Id.* "The likely interference with customer relationships resulting from the breach of a non-compete agreement is the kind of injury for which monetary damages are difficult to calculate. . . Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm and employer." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). In fact, "[i]rreparable harm 'can be inferred from a trial court's actual finding of a breach [of a restrictive covenant] by the defendant.'" *Overholt Crop Ins. Service Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991) (second alteration in original); *accord Basicomputer*, 973 F.2d at 512.

In this case, it would be extremely difficult to calculate the harm to Plaintiff caused by allowing Defendants to continue violating the noncompete provision in the franchise agreement. Perhaps there

would be some way to determine the profits Defendants made during the period of allegedly wrongful conduct, but the damage done by diverting a client base from L.A. Insurance franchises to GO Insurance is fundamentally difficult to quantify. For that reason, Plaintiff has satisfied its burden to demonstrate that it will suffer irreparable harm absent an injunction.

### c. Impact on the public interest

Plaintiff argues that "[e]nforcement of a post-term franchise agreement obligation is in the public interest." ECF No. 4 PageID.97. Defendant argues that the public interest would be harmed because GO Insurance serves customers who tend not to be able to obtain traditional insurance for a variety of reasons—the implication being that these individuals would not be able to obtain insurance at all if an injunction were entered requiring GO Insurance to discontinue operations. ECF No. 8-1 PageID.141. However, nothing would prevent Defendants from moving to a different location and continuing to offer non-standard insurance to these same customers. Complying with the agreement only requires that GO Insurance have a location consistent with the geographic non-compete restriction in the franchise agreement Defendant Elia signed.[7]

---

[7] As noted previously, the franchise agreement also prohibits Defendant from diverting L.A. Insurance's client base.

### d. The possibility of substantial harm to others

Defendant argues that any possible harms to Plaintiff from any alleged breach has already occurred, given that Defendant has been operating in its location as GO Insurance for the last seven months.[8] ECF No. 8-1 PageID.141. But to issue an injunction now would put Defendants Elia and GO Insurance, as well as its staff, out of work. *Id*.

This potential harm is real, but it must be weighed against the harm or allowing a party to violate its legal obligations in a manner that also causes a continuing harm. The Court does not take lightly the possibility of causing innocent employees to be out of a job. But Defendants created this risk by their conduct, and they may also keep their employees employed by operating a Competing Business while abiding by the terms of the franchise agreement.

### e. Security and Scope

Rule 65(c) provides that the "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been

---

[8] The fact that this violation of the franchise agreement has been ongoing for so long is not necessarily the positive point that Defendant makes it out to be.

wrongfully enjoined or restrained." "District courts have broad discretion in setting the bond amount." *Static Control Components, Inc. v. Lexmark International, Inc.*, 697 F.3d 387, 400–01 (6th Cir. 2012) (citing *Div. No. 1, Detroit, Bhd. of Locomotive Eng'rs v. Consol. Rail Corp.*, 844 F.2d 1218, 1226, 1227 n.15 (6th Cir. 1988) ("[T]he court may order a bond that does not completely secure the enjoined party or the court may decline to order a bond, if necessary for the purpose of effective justice between the parties.")). "[T]he Sixth Circuit, unlike several other circuits, holds that the requirement of Rule 65(c) is not mandatory." *Yolton v. Tennessee Pipeline Co.*, 318 F. Supp. 2d 455, 475 (E.D. Mich. 2003) (citing *Roth v. Bank of Commonwealth*, 583 F.2d 527, 538 (6th Cir. 1978)).

Finding the record insufficient to allow the Court to determine a proper bond amount, the Court ordered supplemental briefing on the issue of bond. Order for Supplemental Briefing, ECF No. 13. Defendant filed its supplemental brief on February 25, 2019, ECF No. 14, and Plaintiff responded on February 28, 2019, ECF No. 15. Having reviewed the supplemental briefs and accompanying exhibits, the Court determines that a bond of $120,000 is appropriate, representing Defendant's estimated lost profits from being enjoined for the 24-month period of the non-compete clause.

The Court grants the requested injunctive relief only in part, as stated below.

## V.    Conclusion

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is **GRANTED in part** and **Defendants are HEREBY ORDERED to:**

- Cease operating GO Insurance in its current location;
- Refrain from operating any competing business within two miles of that location or any other L.A. Insurance franchise location;
- Provide an accounting for all gains and profits from October 29, 2018 to the present no later than seven days from the date of this Order;
- Deliver its customer lists and L.A. Insurance's proprietary information to Plaintiff no later than seven days from the date of this Order; and
- Submit a written report to the Court and to Plaintiff within thirty days of the date of this Order setting forth Defendants' compliance with this injunction.

Plaintiff's Motion to Supplement the Record (ECF No. 11) is also **GRANTED**. This Order shall be effective upon Plaintiff's submission to the Clerk of the Court of an injunction bond in the amount of $120,000.

**SO ORDERED.**


Dated:  April 8, 2019          s/Terrence G. Berg
_____
                               TERRENCE G. BERG
                               UNITED STATES DISTRICT JUDGE




## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on April 8, 2019.

                          s/A. Chubb
_____
                          Case Manager